**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 10-2244**

_____

DANIEL L. MILLER, d/b/a D.L. Miller Logging,

        Plaintiff - Appellant,

       v.

MONTGOMERY COUNTY, MARYLAND; ISIAH LEGGETT, County
Executive, Montgomery County; ROBERT HOYT, Director,
Montgomery County Department of Environmental Protection;
STAN EDWARDS, Division Chief, Division of Environmental
Policy and Compliance; LAURA MILLER, County Arborist,
Division of Environmental Policy and Compliance; THE
MARYLAND-NATIONAL CAPITAL PARK AND PLANNING COMMISSION;
ROLLIN STANLEY, Planning Director, The Maryland-National
Capital Park and Planning Commission; MARK PFEFFERLE, Forest
Conservation Program Manager, The Maryland-National Capital
Park and Planning Commission,

        Defendants - Appellees.

_____

Appeal from the United States District Court for the District of
Maryland, at Greenbelt. Alexander Williams, Jr., District
Judge. (8:09-cv-03137-AW)

_____

Argued: October 27, 2011      Decided: December 19, 2011

_____

Before TRAXLER, Chief Judge, and GREGORY and KEENAN, Circuit
Judges.

_____

Affirmed by unpublished opinion. Judge Keenan wrote the
opinion, in which Chief Judge Traxler and Judge Gregory joined.

_____

**ARGUED:** Michele McDaniel Rosenfeld, ROSENFELD & ROSENFELD, LLC, Potomac, Maryland, for Appellant. Edward Barry Lattner, COUNTY ATTORNEY'S OFFICE, Rockville, Maryland; Jared Michael McCarthy, MARYLAND-NATIONAL CAPITAL PARK & PLANNING COMMISSION, Riverdale, Maryland, for Appellees. **ON BRIEF:** Marc P. Hansen, Acting County Attorney, Clifford L. Royalty, Division Chief, COUNTY ATTORNEY'S OFFICE, Rockville, Maryland, for County Appellees; Adrian R. Gardner, General Counsel, MARYLAND-NATIONAL CAPITAL PARK & PLANNING COMMISSION, Riverdale, Maryland, for Commission Appellees.

─────────────

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Circuit Judge:

Daniel L. Miller appeals from the district court's dismissal of his complaint on the ground that he lacked standing to pursue his claims. In his complaint, Miller alleged that Montgomery County, Maryland (the County) and certain County employees and administrative agencies (collectively, the Defendants)[1] wrongfully denied an application for an exemption from the County's Forest Conservation Law relating to certain trees that Miller intended to harvest under a contract he executed with a landowner.

The district court determined, among other things, that Miller did not suffer an "injury in fact" from the denial of the application because the landowner, rather than Miller, was the person who signed the application and the accompanying documents in support of the application. Upon our review, we hold that the district court correctly concluded that Miller lacked standing and, therefore, we affirm the district court's judgment.

---

[1] The Defendants named in Miller's complaint included: Montgomery County, Maryland; County Executive Isiah Leggett; Robert Hoyt, director of the County's Department of Environmental Protection; Stan Edwards, Chief of the Department's Environmental Policy and Compliance Division; Laura Miller, the County Arborist; the Maryland-National Capital Park and Planning Commission; Rollin Stanley, the Commission's Planning Director; and Mark Pfefferle, the Commission's Forest Conservation Program Director.

Miller entered into a contract (the contract) with Dr. Charles Mess to purchase and harvest timber from 584 trees located on Dr. Mess' property in the County (the timber harvesting operation). The contract required Miller to comply with all federal, state, and county regulations governing timber harvesting. The contract further provided that Miller was ultimately responsible for obtaining all permits necessary to harvest the timber.

Under the Montgomery County Code, the harvesting of trees is subject to certain regulatory provisions (the Forest Conservation Law). However, a qualifying "commercial logging and timber harvesting operation" may obtain an exemption from the Forest Conservation Law.[2] Montgomery County Code § 22A-5(d) (the exemption). To qualify for the exemption, a timber harvesting operation must meet three requirements: 1) the property on which such an operation is conducted will not be subject to development for five years after the timber harvesting occurs; 2) a sediment control permit must be obtained

_____

[2] The term "commercial logging [and] timber harvesting operation" is defined in the Montgomery County Code as the "cutting and removing of tree stems from a site for commercial purposes, leaving the root mass intact." Montgomery County Code § 22A-3. There are numerous exemptions to the Forest Conservation Law other than the "commercial logging and timber harvesting" exemption, none of which are at issue in this case.

before conducting the operation; and 3) the County must approve any timber harvesting operation pursuant to a determination by the County Arborist "that the logging or timber harvesting plan is not inconsistent with County forest management objectives and is otherwise appropriate." Id.

Although the contract specified that Miller was responsible for obtaining the necessary permits, Dr. Mess signed the applications and associated documents relating to the exemption. These documents included the following:

1) The application for the "Forest Conservation Plan Exemption," signed by Dr. Mess, listing Dr. Mess as the sole "applicant" for the exemption, and identifying the name of the plan as the "Charles F. Mess Timber Harvest" plan;[3]

2) A sworn, notarized "Forest Declaration of Intent," signed by Dr. Mess, in which he pledged not to develop his property for five years, pursuant to the first requirement for obtaining an exemption;

3) A sworn, notarized "Forest Conservation Ordinance Declaration of Intent for Forestry Activities," signed by Dr. Mess, making certain promises and representations concerning the timber harvesting operation and Dr. Mess' future use of his land;

4) The application for a "Sediment Control Permit," signed by Dr. Mess, a necessary step towards

---

[3] On this application, there was a section providing for an additional "contact person." The completed application listed Vincent H. Berg, a consultant hired by Miller, as the additional contact person, rather than Miller himself.

5

satisfying the second requirement for obtaining an exemption;[4] and

5) A "Compliance Agreement for the Standard Erosion and Sediment Control Plan for Forest Harvest Operations" (the Compliance Agreement), signed by Dr. Mess, in which he agreed to allow inspectors a right of entry onto his land to monitor the operation's compliance with County regulations, and in which Dr. Mess affirmed that it was his responsibility as property owner to prevent accelerated erosion and sedimentation during and after the operation; Miller signed this document on the signature block for the "Operator" of the timber harvest operation.

Additionally, several documents were submitted on Dr. Mess' behalf by William V. Brumbley, a registered forester hired by Dr. Mess, including:

1) A "Forest Management and Stewardship Plan," submitted for "Charles F. Mess, Et Al, Trustees," by Brumbley, to the County Arborist at her request; and

2) An application for a "Timber Harvest Exemption" submitted by Brumbley to the County Arborist, containing information that the County Arborist had requested from Dr. Mess.

The County Arborist declined to approve the timber harvest plan on the ground that the plan did not satisfy the County's "forest management objectives." Almost all the written correspondence concerning the County Arborist's rejection of the timber harvest plan was exchanged between her and either Dr.

---

[4] The application for the Sediment Control Permit was approved, and the permit was issued to Dr. Mess in his name.

Mess or Brumbley.[5]  Because the County Arborist did not approve Dr. Mess' timber harvest plan, the timber harvesting operation did not qualify for an exemption from the County.

Although the documents signed by Dr. Mess contained only a few references to Miller, Miller undertook certain acts to help obtain the necessary approvals of Dr. Mess' applications. According to Miller, he participated in the application process by:

1) Paying the required permit fees;

2) "Walking [Dr. Mess'] property" with Berg, Miller's consultant, to obtain certain information required by the County in its permitting process;

3) Meeting with County officials to discuss the merits of the timber harvest application after the application was denied;

4) Signing the Compliance Agreement as the "Operator" of the timber harvest operation; and

5) Sending an email through his consultant to the Maryland-National Capital Park and Planning Commission (the Commission) seeking a meeting to discuss the County Arborist's decision, an action that Miller characterizes as his "attempt[] to file an administrative appeal."

---

[5]  Additionally, an April 2009 email was sent from Berg, Miller's consultant, to Candy Bunnag, the Environmental Planner for the Maryland-National Capital Park and Planning Commission. In this email, Berg requests that the Commission schedule a meeting to discuss the County Arborist's refusal to approve the Timber Harvest Plan.

It is undisputed, however, that all the necessary applications were signed by Dr. Mess and were submitted in his name, and that only one of those documents contained a reference to Miller.

On November 23, 2009, Miller filed a complaint against the Defendants in the United States District Court for the District of Maryland, contending that the Defendants wrongfully denied the application for an exemption to conduct the timber harvest operation. Miller later filed an amended complaint against the Defendants asserting eleven causes of action under state and federal law, including causes of action for violations of the Due Process and Equal Protection Clauses of the United States Constitution, the Takings Clauses of the United States and Maryland Constitutions, and several common law torts.[6] Notably, Dr. Mess did not join Miller's lawsuit and is not a party in this case.

---

[6] The eleven counts in the amended complaint include claims for: equal protection, in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983 (Count I); substantive due process, in violation of the Fourteenth Amendment and 42 U.S.C. § 1983 (Count II); procedural due process, in violation of the Fourteenth Amendment and 42 U.S.C. § 1983 (Counts III, IV, and V); unlawful taking of property, in violation of the Fifth Amendment and 42 U.S.C. § 1983, and the Maryland State Constitution (Count VI and VII), and several state common law tort claims, including tortious interference with contractual relations (Count VIII), conspiracy to commit tortious interference with contractual relations (Count IX), tortious interference with prospective economic relationships (Count X), and conspiracy to commit tortious interference with prospective economic relationships (Count XI).

The Defendants filed a motion seeking to dismiss Miller's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In their motion, the Defendants argued that Miller lacked standing to pursue the federal and state constitutional claims, because Dr. Mess was not a party to the lawsuit. Addressing the claims asserted under the Takings Clauses, the Defendants contended that Miller lacked standing to pursue those claims because he did not apply for the exemption. The Defendants also contended that Miller could not pursue his claims under the Due Process Clause, because he had only an expectation of a protected property interest in the subject matter, rather than an existing protected property interest. The district court agreed with the Defendants' arguments and granted their motion to dismiss. Miller timely noted an appeal.[7]

## II.

We review de novo the district court's decision granting the Defendants' motion to dismiss and, in conducting our review, we assume as true all well-pleaded facts and draw all reasonable inferences in favor of the plaintiff. Nemet Chevrolet, Ltd. v.

---

[7] Additionally, the Defendants argued, and the district court agreed, that Miller's complaint failed to state a claim for which relief could be granted with respect to the state common law tort claims. Miller has not appealed the district court's dismissal of his common law tort claims.

Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009). However, we will not accept as true any unwarranted inferences or unreasonable conclusions. Id.

We first address Miller's argument that the district court erred in holding that he lacked standing to pursue this action independently of Dr. Mess. The requirement of standing is a threshold requirement implicating the jurisdiction of the federal courts, and is "perhaps the most important" condition for a justiciable claim. Allen v. Wright, 468 U.S. 737, 750 (1984). The standing inquiry ensures that a plaintiff has a sufficient personal stake in a dispute to render its judicial resolution appropriate. See id. at 750-51.

To meet the minimum constitutional requirements for standing, a plaintiff must establish three elements: (1) that the plaintiff has sustained an injury in fact; (2) that the injury is traceable to the defendants' actions; and (3) that the injury likely can be redressed by a favorable judicial decision. Friends of the Earth, Inc. v. Gaston Copper Recycling Corp., 629 F.3d 387, 396 (4th Cir. 2011) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). To demonstrate an injury in fact, a plaintiff must suffer an invasion of a legally-protected interest that is concrete and particularized, as well as actual or imminent. Id. (citing Lujan, 504 U.S. at 560).

In the present case, Miller has failed to establish that he suffered an "injury in fact." The gravamen of Miller's complaint is the Defendants' failure to grant the application for an exemption from the Forest Conservation Law. However, it was not Miller who made this application. As stated above, the sole applicant was Dr. Mess, who signed the application for the Forest Conservation Plan Exemption. Additionally, Dr. Mess, not Miller, signed the Forest Declaration of Intent, applied for and received the Sediment Control Permit issued only in Dr. Mess' name, and signed the Forest Conservation Ordinance Declaration of Intent in which he made certain promises regarding the future use of his land. Miller's signature as "the Operator" was required on only one of the necessary documents, the Compliance Agreement form, which Dr. Mess also signed as the "Landowner". Moreover, by signing all the required documents, Dr. Mess, not Miller, made various promises and representations concerning the projected use of Dr. Mess' property. Thus, any exemption allowed by the County would have been granted to Dr. Mess, not to Miller.

Because it is undisputed that Dr. Mess signed all the necessary documents comprising the exemption application, we agree with the district court's conclusion that Miller "had

little to no involvement" in the exemption application process.[8] Thus, the only person in this case aggrieved by the Defendants' failure to approve the exemption was Dr. Mess.

We observe that our holding is in accord with the Seventh Circuit's decision in Rosenberg v. Tazewell Cnty., 882 F.2d 1165 (7th Cir. 1989), a case presenting analogous facts. There, a landowner entered into a contract with a developer for the sale of a parcel of land. Id. at 1166. The contract was contingent on the developer's construction of an energy-generating facility on the land, which in turn was contingent on obtaining certain necessary construction permits from state and local authorities. Id. The developer submitted an application to the county board for approval of the proposed facility location, which the board rejected. Id. at 1166-67. Because the county board did not approve the application, the sale of the land was not consummated. Id. at 1167.

After the county board's decision, the landowner filed a lawsuit against the county, alleging similar takings and due process clause violations as those alleged by Miller in the present case. The district court dismissed the landowner's

---

[8] Miller argues that someone in his position is authorized to file the necessary documents in support of an application for an exemption. We conclude that this argument is not relevant here because even if Miller could have submitted such documents, the fact is that he did not do so.

12

lawsuit on standing grounds, holding that the landowner lacked standing because his contract with the developer "gave rise only to an expectation that the agreement would be consummated." Id. at 1167. The Seventh Circuit affirmed the district court's holding, concluding that the county board's rejection pertained only to the applicant, in that case the developer, not to the landowner who had failed to join in the application, and that the landowner failed to meet the "injury in fact" requirement to establish standing. Id. at 1169.

In this case, Miller stands in a similar position to the landowner in Rosenberg, because they each filed a lawsuit complaining about the denial of a permit for which they did not apply. Thus, consistent with the reasoning articulated by the Seventh Circuit, Miller failed to satisfy the "injury in fact" requirement and lacked standing to pursue this action because the Defendants rejected Dr. Mess' application, not Miller's.[9] See id.

---

[9] Additionally, the district dismissed Miller's due process claims for lack of standing on the ground that he did not have a constitutionally-protected property interest. We agree with the district court's conclusion, because Miller's right to harvest the timber was contingent on securing the required permits issued at the discretion of the County Arborist. Thus, Miller merely had an expected, rather than an existing, property interest, which was insufficient to support either a substantive or procedural due process claim. See Gardner v. City of Baltimore Mayor and City Council, 969 F.2d 63, 68 (4th Cir. 1992) (holding that "[a]ny significant discretion conferred" (Continued)

13

We next address Miller's argument that he had standing to bring this action under the third-party standing doctrine. The doctrine of third-party standing allows a plaintiff to bring an action on behalf of a third party, alleging an injury sustained by that third party, under certain circumstances in which the third party cannot effectively protect its own interests. A Helping Hand, LLC v. Baltimore Cty., 515 F.3d 356, 363 n.3 (4th Cir. 2008). In order to maintain third-party standing, a plaintiff must establish the following three requirements: (1) an injury-in-fact; (2) a close relationship between the plaintiff and the person whose right is being asserted; and (3) a hindrance to the third party's ability to protect his or her own interests. Freilich v. Upper Chesapeake Health, Inc., 313 F.3d 205, 215 (4th Cir. 2002) (citing Powers v. Ohio, 499 U.S. 400, 410-11 (1991)).

---

upon a government agency in considering a request for a permit or an approval defeats a claim of a property interest in the permit or approval.); Phelps v. Housing Auth. of Woodruff, 742 F.2d 816, 823 (4th Cir. 1984) (a contingent or expected property interest, in contrast to an entitlement to a property interest, does not "rise to the level" of a constitutionally protected property interest for due process purposes). However, because we hold that all Miller's constitutional claims failed in view of his inability to establish an "injury in fact," this additional basis supporting the dismissal of Miller's due process claims does not merit further explanation.

We need not address the first two requirements of this test because it is manifest that Miller cannot establish the third required element, namely, any "hindrance to [Dr. Mess'] ability to protect his[] own interests." Id. Regarding this third requirement, Miller does not identify, nor can we discern from this record, any hindrance to Dr. Mess' ability to protect his interests in his own property and in the permit applications that he submitted. Dr. Mess could have filed his own lawsuit or could have joined in Miller's lawsuit, but Dr. Mess did not take such action. Therefore, we hold that the district court correctly determined that Miller was not entitled to pursue his claims under a theory of third-party standing.

### III.

In conclusion, we hold that the district court did not err in determining that Miller lacked standing to pursue his

constitutional claims against the Defendants. Therefore, we affirm the district court's judgment.[10]

AFFIRMED

---

[10] We reject Miller's request, made for the first time in his reply brief, to reverse the district court's order and grant Miller leave to file a second amended complaint adding Dr. Mess as a plaintiff. Because Miller did not file a motion seeking this relief in the district court, nor did he seek such relief in his initial appellate brief, we will not consider his request. See Edwards v. City of Goldsboro, 178 F.3d 231, 241 n.6 (4th Cir. 1999) (claim not properly raised in appellant's opening brief is deemed abandoned); Cavallo v. Star Enter., 100 F.3d 1150, 1152 n. 2 (4th Cir. 1996) (argument not raised in opening brief, but raised for first time in reply brief, is waived).